**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1547-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RANARD K. BAYARD, a/k/a
RANARD BARARD,

    Defendant-Appellant.

_____

Argued November 28, 2018 - Decided January 14, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-10-2918.

Margaret R. McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

Jane C. Schuster, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized in a warrantless search, defendant Ranard K. Bayard pleaded guilty to third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1), and was sentenced in accordance with a negotiated agreement to three years' probation conditioned on service of 180 days in the county jail, forfeiture of $2736 and imposition of appropriate fines and penalties.[1]  Defendant appeals from the denial of his motion to suppress the drugs found in his car.  Finding no basis to disturb Judge Polansky's factual findings or legal conclusions, we affirm.

At the suppression hearing, the arresting officer testified he stopped defendant in August 2016 because the car he was driving had a cracked windshield and tinted front windows.  After defendant told the officer his license was suspended and the officer discovered an outstanding warrant for defendant's arrest, defendant was arrested.  In the course of a search incident to that arrest, the officer discovered $66 in small bills wrapped in a single black rubber band, $1900 wrapped in a ball secured by two black rubber bands and $100 in loose cash in defendant's front pants pocket.  Suspicious about the amount of money

[1]  Pursuant to the plea agreement, the court subsequently stayed the custodial portion of defendant's sentence during the pendency of this appeal.

and the way it was bundled and not satisfied with defendant's explanation for it, the officer asked to search the car. When defendant refused, the officer called for a drug dog.

In the course of conducting an exterior sniff of the car, the dog indicated she detected the odor of narcotics at the front passenger side door. A search of the car revealed eight orange bags of cocaine between the driver's seat and the center console.

The dog's handler testified to his training and the dog's. The officer explained he had worked as part of the K9 unit for eighteen months prior to the search of defendant's car. He began working with the dog, Mai, two months into his assignment. Both attended the Voorhees K9 training program, receiving certifications for patrol in June 2015 and narcotics in January 2016. According to the officer, patrol training included agility work, as well as searching and tracking. In narcotics training, the dog learned to identify the odors of different narcotics, including marijuana, cocaine, crack cocaine base, crack, heroin and methamphetamines.

The court admitted a "CV" for the officer and Mai, which detailed the dog's sixteen weeks of patrol training and ten weeks of narcotics training, as well as monthly in-service training, and noted that she and her handler had been

3

evaluated in January 2016 by a supervising specialty K9 trainer of the New Jersey Police K9 Association and the team deemed suitable for specialty narcotics detection. The CV asserted Mai was reliable and consistent in detecting the specific substances she had been trained to recognize and that in twenty field sniffs for narcotics, the dog made twelve positive indications and nine "[f]inds," meaning she had been correct about the presence of drugs seventy-five percent of the time since January 2016. The court also admitted the team's detailed training logs from the ten weeks of narcotics training.

In a detailed opinion delivered from the bench, Judge Polansky summarized the testimony of the two officers, both of whom he found good, credible witnesses, who answered questions on direct and cross-examination fully and undefensively, addressed the case law relied on by the defense, and methodically stepped through each event from the officer's reasonable suspicion for the stop through the probable cause for defendant's arrest, the results of the ensuing search and the officer's reasonable and articulable suspicion for ordering the canine sniff.[2] The judge next proceeded to analyze whether the State had

---

[2] Subsequent to the court's consideration of this motion, our Supreme Court ruled reasonable suspicion for a canine sniff is unnecessary where, as here, the stop was not prolonged for that purpose, State v. Dunbar, 229 N.J. 521, 540 (2017), aligning our law with the federal standard, see Rodriguez v. United

4

sufficiently established the dog's reliability under <u>Florida v. Harris</u>, 568 U.S. 237, 246-47 (2013), to support probable cause to search the car under <u>State v. Witt</u>, 223 N.J. 409, 450 (2015).

Judge Polansky cogently and comprehensively addressed the evidence in the record regarding the dog's reliability, including the fourteen months of training records, and rejected, based on that evidence and <u>Harris</u>, defendant's challenge to the canine sniff. Specifically, the judge found in pertinent part:

> The fact that this dog only gave a positive indication in 12 of 20 searches coupled with the training information does not suggest any issue that there is a tendency of the handler to cue the dog since the dog was even in the field not responding in 40 percent of the searches. And as the Court in <u>Florida v. Harris</u> indicated, positive indications by a dog in the field as opposed to in the controlled training setting is not an indication of dog unreliability since the mere fact that drugs are not found doesn't answer the question, one, as to whether drugs had been in the car previously, whether someone had touched the door handle or had touched the car who had handled drugs or that the drugs were sufficiently hidden that despite the positive sniff they were not discovered in the vehicle. It's very common for drugs to be hidden in hidden compartments when being transported in vehicles. So the fact that this dog on three occasions in the field indicated positive, however, no drugs were found, as recognized in <u>Florida</u>

---

<u>States</u>, 575 U.S. ____, ____, 135 S. Ct. 1609, 1616 (2015). Defendant was already under arrest on an outstanding warrant when the arresting officer called for a canine sniff of defendant's car.

v. Harris, is not a good indication that this dog is not reliable.

I also note in Florida v. Harris, unlike here, here this dog's certification was current. In Florida v. Harris, the dog's certification had expired prior to the time of the search.

. . . .

Here, the circumstances giving rise to probable cause I do find to have been unforeseeable and spontaneous. Officers were not looking for an excuse to stop this vehicle. This vehicle was stopped as a result of observed violations of motor vehicle laws. Additionally, the reasonable articulable suspicion for the dog sniff in the first instance did not arise until after Mr. Bayard was placed under arrest, number one, because he had an outstanding warrant which was not — it existed but it was not known by the officer; and, two, he had a suspended driver's license. So the fact that the breakup of the money that was found and the way it was packaged and the significant amount of money would certainly not have been something officers would have been aware of. That was unforeseeable at the time.

Since I do find that the various factors including the dog sniff rise to the level of probable cause, under State v. Witt and State v. Alston, here officers were permitted to conduct a search of the vehicle. That search uncovered the drugs. Therefore, based upon for all those reasons, the motion to suppress will be denied.

Defendant appeals, raising one issue:

BECAUSE THE STATE FAILED TO ESTABLISH THAT THE CANINE IN THIS MATTER WAS

6

CERTIFIED BY A BONA FIDE ORGANIZATION, THE ALERT BY THE CANINE FAILS TO ESTABLISH PROBABLE CAUSE UNDER FLORIDA V. HARRIS.

We reject defendant's argument because it misstates the standard established in Harris for establishing a drug detection dog's reliability. The United States Supreme Court in Harris held:

> [E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs.
>
> [Harris, 568 U.S. at 246-47 (emphasis added).]

Accepting defendant's argument that the State failed to establish the dog's certification by a bona fide organization would not invalidate this search. The trial court made extensive findings about the dog's reliability based on her recent completion of "a training program that evaluated [her] proficiency in locating drugs," id. at 247, a finding defendant does not challenge on appeal, and one which we find well supported in the record and thus binding on appeal. See State v. Hubbard, 222 N.J. 249, 269 (2015) ("[A]n appellate tribunal must defer

7

to the factual findings of the trial court when that court has made its findings based on the testimonial and documentary evidence presented at an evidentiary hearing.").

Accordingly, we affirm the denial of defendant's suppression motion and his conviction and sentence, essentially for the reasons expressed by Judge Polansky in his thoughtful and thorough opinion from the bench on May 4, 2017, and remand for vacation of the stay of the custodial portion of defendant's sentence.

Affirmed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION