**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4822-17T2

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

YACHOR R. NAPPER and
BRANDON E. FIGARO,

      Defendants-Respondents.

_____

      Submitted February 5, 2019 – Decided  February 19, 2019

      Before Judges Fisher and Geiger.

      On appeal from interlocutory orders of Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-02-0233.

      Damon G. Tyner, Atlantic County Prosecutor, attorney for appellant (Dylan P. Thompson, Assistant Prosecutor, of counsel and on the brief).

      Mark A. Bailey, attorney for respondent Yachor R. Napper.

      Murray N. Sufrin, attorney for respondent Brandon E. Figaro, joins in the brief of respondent Yachor R. Napper.

PER CURIAM

Upon leave granted, the State appeals from two interlocutory Law Division orders granting defendants Yachor R. Napper and Brandon E. Figaro's motion to suppress evidence seized during a warrantless vehicle search, and denying the State's motion for reconsideration. We reverse and remand.

At about 1:30 p.m. on November 2, 2016, Pleasantville Police Department Officers Tell and VanSyckle were on patrol when they came upon a Hyundai Sonata with an unclear temporary Delaware registration stopped in the lane of travel impeding traffic while the occupants spoke to a woman on the sidewalk. The officers initiated a traffic stop. Napper was the driver and Figaro was in the front passenger seat. The officers knew Figaro had a history of weapons and drug distribution offenses.

Officer VanSyckle approached the passenger side window and Officer Tell approached the driver's side window. Officers VanSyckle and Tell observed a bulge in the pocket in the front waist area of Napper's hooded sweatshirt. They were concerned it could be a gun. Officer VanSyckle acknowledged there was nothing specific about the shape of the bulge that would indicate it was a gun other than its location in the waistband area. Officer VanSyckle ordered Napper to turn off and exit the vehicle. Napper refused,

becoming rude.  Officer Tell conducted a pat down of Napper after he finally exited the vehicle and discovered the bulge was a winter hat.  Napper was asked to remain outside the vehicle.  Officer Tell requested Napper's driver's license and vehicle registration.

Officer VanSyckle then observed a black object that resembled the rubberized handle of a handgun in the map pouch on the backside of the passenger seat.  He handcuffed Napper and placed him on the ground.  Officer Tell removed Figaro from the vehicle for officer protection, handcuffed him, and placed him on the ground pending an investigation.  The object in the seat pouch turned out to be a black metal hammer with a rubberized grip.

Officer VanSyckle contacted Delaware authorities regarding the vehicle's temporary registration and learned the registration was for a Volkswagen Jetta.  He also learned the vehicle was not reported stolen.  Due to the fictitious registration, Officer VanSyckle requested a tow truck to transport the vehicle to an impound lot.

Officer VanSyckle noticed a suspicious, "very visible" gap between the air vents and the dashboard.  The plastic panel around the vehicle's radio and center air vents was loose and the seams were not properly aligned.  Based on

his training and experience, Officer VanSyckle believed the dashboard had been tampered with.

At the time of the stop, Officer VanSyckle had approximately seven years experience as a police officer. His training included an eight-hour class on electronically operated hidden compartments within vehicles and a Drug Enforcement Administration class on how to locate, access, and observe indicators of hidden compartments in different vehicle makes and models. His experience included a recent incident involving a vehicle with a temporary Delaware registration that had an electronically operated hidden compartment in the dashboard where the front passenger's side airbag had been removed.

Officer VanSyckle suspected the dashboard had a hidden compartment containing a concealed controlled dangerous substance (CDS). Officer VanSyckle believed the vehicle contained contraband in the dashboard. He asked defendants for consent to search the vehicle; the record does not disclose their response. The officers then requested a K-9 unit to conduct a canine drug detection sniff test of the vehicle.

Defendants were allowed to leave the scene because the officers determined there was no reason to keep them. By that point the stop "was well within probably about forty-five minutes." The officers did not issue any

4                                                                                 A-4822-17T2

summonses to defendants at the scene because Officer VanSyckle did not have his ticket book. He subsequently mailed the motor vehicle summons.

The K-9 unit arrived approximately ten minutes after the officers' request. By that point defendants had already left the scene. The K-9 unit gave a positive indication for narcotics. A subsequent search of the vehicle revealed a defaced, fully loaded Ruger .45 caliber handgun in a hidden dashboard compartment. The search also uncovered a quantity of CDS, which later tested positive for heroin, and a large quantity of drug distribution materials. Napper and Figaro were then located and arrested on CDS and weapon charges.

A grand jury indicted defendants for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a handgun while committing a CDS offense, N.J.S.A. 2C:39-4.1(a); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3); fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(d); third-degree possession of CDS with intent to distribute in a school zone, N.J.S.A. 2C:35-7; and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1). On February 13, 2018, a superseding indictment was issued.[1]

---

[1] The superseding indictment included additional weapon and CDS charges against Napper resulting from a subsequent traffic stop. The vehicle search leading to the additional charges is not at issue in this appeal.

Napper moved to suppress the physical evidence seized during the warrantless vehicle search. Figaro joined in the motion. Defendants argued by waiting for the K-9 unit to arrive at the scene, the officers prolonged the stop beyond the reasonable time required to complete the traffic stop's mission, and that the officers should not have released defendants from the scene. Defendants also contended the automobile exception to the warrant requirement does not apply, because the search of the vehicle after defendants were released from the scene cannot be considered unforeseeable or spontaneous. Defendants further argued the search did not fall under the exigent circumstances exception to the warrant requirement because an officer could have stayed with the vehicle until a warrant was issued or the tow truck arrived.

The trial court conducted a two-day suppression hearing. Officer VanSyckle was the only witness who testified as to this vehicle search. The trial court issued a subsequent order and oral and written decisions suppressing the evidence seized from the vehicle. The motion judge found the officers' justification for releasing defendants from the scene before the canine sniff was conducted "must fail because they had probable cause to call for a canine unit." Noting the officers had a reason to keep the defendants at the scene but decided not to, the court stated:

> Once the officers informed the defendants that the vehicle was going to be impounded, one of the four officers on the scene should have called for a search warrant instead of waiting for the canine unit to arrive. By waiting for the canine unit, the officers prolonged the stop beyond a reasonable time required to complete the stop[']s mission.

The judge concluded the officers should have kept defendants at the scene and sought a search warrant upon requesting a tow truck to impound the vehicle. The judge did not make any credibility findings.

The State moved for reconsideration, arguing the holding in State v. Dunbar, 229 N.J. 521 (2017), concerning a traffic stop extending beyond a reasonable time, applies only to persons detained, not to vehicles. Relying on State v. Witt, 223 N.J. 409 (2015) and State v. Alston, 88 N.J. 211 (1981), the State argued because the officers had probable cause to believe the vehicle contained contraband, the search of the vehicle was permitted under the automobile exception to the warrant requirement. Emphasizing that the car is accessible to third persons who might destroy evidence because "the car is readily movable until such time as it is seized, removed from the scene and securely impounded by police," the State contends "when there is probable cause to conduct an immediate search at the scene of the stop, the police are not required to delay the search by seizing and impounding the vehicle pending

7

review of that probable cause determination by a magistrate." Alston, 88 N.J. at 234-35.

The motion judge denied reconsideration, but the record on appeal does not reflect if the judge issued an oral or written decision stating the basis for her decision. See R. 2:5-6(c) (requiring the motion judge to submit "a written statement of reasons for the disposition" upon the filing of a motion for interlocutory appeal if the judge had not previously "filed a written statement of reasons or if no verbatim record was made of any oral statement of reasons"); see also R.1:6-2(f).

We granted the State's motion for leave to appeal from the two orders. The State raises the following points:

> POINT I
> THE TRIAL COURT ERRED IN DECIDING THE SEARCH OF THE VEHICLE WAS UNLAWFUL BECAUSE THE SEARCH OF THE OFFICERS PROLONGED THE TRAFFIC STOP.
>
> POINT II
> THE SEARCH OF THE VEHICLE WAS LAWFUL UNDER THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT.
>
> POINT III
> THE SEARCH OF THE VEHICLE WAS LAWFUL UNDER THE DESTRUCTION OF EVIDENCE [EXIGENT] CIRCUMSTANCE EXCEPTION TO THE WARRANT REQUIREMENT.

"Appellate review of a motion judge's factual findings in a suppression hearing is highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). "Those findings warrant particular deference when they are 'substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference. Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

A-4822-17T2

A traffic "stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." Dunbar, 229 N.J. at 532 (citing Arizona v. Johnson, 555 U.S. 323, 333 (2009); State v. Scriven, 226 N.J. 20, 33 (2016)). A police officer must have reasonable suspicion that someone in the car is committing a motor vehicle violation or a criminal or disorderly persons offense in order to justify a traffic stop. Dunbar, 229 N.J. at 533; Scriven, 226 N.J. at 33.

"During an otherwise lawful traffic stop, a police officer may 'inquire into matters unrelated to the justification for the traffic stop.'" Dunbar, 229 N.J. at 533 (quoting Johnson, 555 U.S. at 333). This includes verifying the driver's license, registration, proof of insurance, and whether the driver has any outstanding warrants. Ibid. If "during the initial stop or further inquiries, 'the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'" Ibid. (alteration in original) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)). The stop may not be unreasonably prolonged "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 533-34 (quoting Rodriguez v. United States, 575 U.S. ___, 135 S.Ct. 1609, 1615 (2015)); see also Dickey,

A-4822-17T2

152 N.J. at 476-79 (noting detention can become unlawful if longer than needed to diligently investigate suspicions).

However, "an officer does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a canine sniff." Dunbar, 229 N.J. at 540. Nevertheless, "an officer may not conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he possesses reasonable and articulable suspicion to do so." Ibid. (citing Rodriguez, 135 S.Ct. at 1616-17). Absent such suspicion, an officer may not prolong the stop.

In Witt, our Supreme Court abandoned the "pure exigent-circumstances requirement" it had added to the constitutional standard to justify an automobile search and returned to the standard set forth in Alston. 223 N.J. at 447. The Court held a warrantless search of an automobile is authorized under the automobile exception "when the police have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." Ibid. (citing

Alston, 88 N.J. at 233).[2]  "However, when vehicles are towed and impounded, absent some exigency, a warrant must be secured."  Id. at 450.

Here, the traffic stop was justified because the police officers had a reasonable suspicion the driver was committing a motor vehicle violation.  The police were permitted to ask the driver to produce his driver's license, proof of insurance, and vehicle registration.  The officers were justified in removing the driver and passenger after observing what may have been a weapon under the driver's sweatshirt and what appeared to be the handle of a handgun protruding from a map pocket.  Further investigation revealed the out-of-state temporary registration for the vehicle was expired and pertained to a different vehicle.  This allowed the officers to impound the vehicle.

The police officers did not need additional justification to conduct a canine drug sniff test.  The K-9 unit alerted for narcotics in the car.  In addition, Officer VanSyckle observed the plastic around the vehicle's radio and center air vents was loose and the seams were not properly aligned and a small gap in the glove box.  Based on his training and experience, Officer VanSyckle reasonably believed the dashboard could contain narcotics.  Viewed through the prism of

---

[2]  The holding in Witt was given prospective application from the date of the opinion.  Id. at 450.  Witt was decided prior to the November 2, 2016 investigatory stop in this case and, therefore, applies to this case.

the officers' experience and knowledge of Figaro's criminal history, it was entirely appropriate for the police officers to reasonably suspect the vehicle contained contraband.

In order to establish probable cause to conduct a search, the State must show from the totality of the circumstances there is "a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). That standard was clearly met here. The police officers had probable cause to believe the vehicle contained CDS.

By any measure, "the circumstances giving rise to probable cause [were] unforeseeable and spontaneous." Witt, 223 N.J. at 447 (citing Alston, 88 N.J. at 233). The police were not looking for either defendant or the vehicle they occupied at the time the stop was made. Therefore, the warrantless vehicle search was fully justified by the automobile exception reestablished in Witt. The fact the police officers requested a tow truck to impound the vehicle does not change the result. The search was conducted roadside before the vehicle was towed and impounded.

The release of the defendants from the scene did not obviate the justification for the search of the vehicle. At that point the officers did not have

grounds to arrest defendants and were unable to issue traffic summonses because they lacked a ticket book. We further conclude the additional time expended to determine if the Delaware temporary registration was valid and to conduct the canine drug sniff of the vehicle was reasonable given the unfolding events during the roadside stop. Therefore, the warrantless search was permissible.

For these reasons, the trial court erred by suppressing the physical evidence seized from the vehicle and by denying reconsideration. We reverse the March 13, 2018 and April 9, 2018 orders and remand this matter for trial. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4822-17T2