**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2432-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE D. GRAHAM, a/k/a BOO GRAHAM,
and JOSE DANIEL GRAHAM,

    Defendant-Appellant.

_____

Submitted April 9, 2018 — Decided August 9, 2018

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Gloucester County, Indictment
Nos. 15-12-0766, 16-08-0670 and 16-10-0801.

Joseph E. Krakora, Public Defender, attorney
for appellant (Daniel S. Rockoff, Assistant
Deputy Public Defender, of counsel and on the
brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Regina M. Oberholzer, Deputy
Attorney General, of counsel and on the
brief).

PER CURIAM

Defendant Jose D. Graham was charged in three indictments with crimes arising out of three separate incidents occurring in 2015 and 2016. The court denied defendant's motions to suppress evidence in two of the matters and, after a jury found him guilty of the charges in one indictment, he pleaded guilty to crimes in the others. In a single sentencing proceeding, he received an aggregate twelve-year sentence with a seven-year period of parole ineligibility.

Defendant appeals from the orders denying his motions to suppress evidence, and from the sentence imposed in one of the matters. Based on our review of the record in light of the applicable law, we reverse one of the court's suppression orders and defendant's conviction in that matter, and remand for further proceedings. We also vacate the sentence defendant challenges on appeal and remand for resentencing.

I.

In 2015, defendant was charged in a six-count indictment[1] (2015 indictment) with drug-related offenses arising out of a September 1, 2015 motor vehicle stop. Defendant moved to suppress the controlled dangerous substances — marijuana, 3,4 Methylenedioxy-ethylcalthinone and cocaine — seized from his pants

---

[1] Gloucester County Indictment No. 15-12-0766.

pocket following the stop. After a suppression hearing, the court determined the seizure of the drugs was proper under the plain-view exception to the warrant requirement, and denied the suppression motion. Defendant proceeded to trial and in April 2016 was convicted by a jury of two counts of third-degree possession of a controlled dangerous substance, cocaine and 3,4 Methylenedioxy-ethylcalthinone, respectively.

In August 2016, while awaiting sentencing following his trial, defendant was indicted[2] (August 2016 indictment) for one count of possession of a controlled dangerous substance.

Two months later, defendant was also charged in an indictment[3] (October 2016 indictment) with seven drug offenses and four weapons offenses arising out of a November 28, 2015 motor vehicle stop. Defendant moved to suppress a handgun seized from the vehicle and drugs found on his person following the stop, as well as statements he made to the police after his arrest. The court held a testimonial hearing and, in a written opinion, denied the motion finding there was probable cause for the search of the vehicle, the drugs were recovered during a search incident to a lawful

---

[2]   Gloucester County Indictment No. 16-08-0670.

[3]   Gloucester County Indictment No. 16-10-0801.

arrest and defendant's statements were voluntarily made after he waived his Miranda[4] rights.

Defendant subsequently pleaded guilty to third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1), under the August 2016 indictment, and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1), under the October 2016 indictment. In exchange for his guilty pleas, the State agreed to withdraw its motion for a discretionary extended term sentence, N.J.S.A. 2C:44-3, for his convictions under the 2015 indictment, and recommend an aggregate sentence not to exceed seven years with a five-year period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6, on the charges under the August 2016 and October 2016 indictments.

The court sentenced defendant in accordance with the plea agreement, imposing a seven-year sentence with a five-year period of parole ineligibility on the certain persons offense under the October 2016 indictment and a concurrent three-year sentence on the possession of a controlled dangerous substance charge under the August 2016 indictment. The court merged defendant's convictions for the drug offenses in the 2015 indictment, and imposed a five-year sentence with a two-year period of parole

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

ineligibility consecutive to the sentences imposed under the August 2016 and October 2016 indictments. Defendant's aggregate sentence on the charges in the three indictments is twelve years with a seven-year period of parole ineligibility.

Defendant appealed, and presents the following arguments for our consideration:

POINT I

POLICE IMPERMISSIBLY PROLONGED THE DETENTION OF [DEFENDANT] AND HIS GIRLFRIEND, WHO WAS EIGHT MONTHS PREGNANT, DURING WHAT SHOULD HAVE BEEN A ROUTINE VEHICLE STOP. ACCORDINGLY, THE COURT ERRED BY DENYING THE MOTION TO SUPPRESS ALL EVIDENCE FROM INDICTMENT NO. 16-10-[0]0801.

POINT II

AN OFFICER CONCEDED THAT HE FAILED TO SECURE A WAIVER OF THE MIRANDA RIGHTS BEFORE INTERROGATING [DEFENDANT]. ACCORDINGLY, THE COURT ERRED BY DENYING THE MOTION TO SUPPRESS [DEFENDANT]'S STATEMENT ON INDICTMENT NO. 16-10-[0]0801.

POINT III

AFTER OFFICERS REALIZED THAT [DEFENDANT] WAS NOT THE SUSPECT SOUGHT IN A SHOOTING, THEY IMPERMISSIBLY PROLONGED HIS DETENTION IN ORDER TO SEARCH HIM FOR WEAPONS. ACCORDINGLY, THE COURT ERRED BY DENYING THE MOTION TO SUPPRESS EVIDENCE FROM INDICTMENT NO. 15-12-[0]0766.

POINT IV

THIS COURT SHOULD REMAND FOR RESENTENCING ON THE TRIAL CONVICTIONS.

> 1. The trial court improperly applied aggravating factor 1 in a straightforward case of drug possession.
>
> 2. The Court improperly found that [defendant] was a "professional drug dealer," even though the jury acquitted [defendant] of all intent to distribute charges.

## II.

We first consider defendant's claim the court erred by denying his motions to suppress evidence seized as a result of the separate September 1 and November 28, 2015 motor vehicle stops, and statements he made following the November 28 stop. "When reviewing a trial court's decision to grant or deny a suppression motion, [we] 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Ibid. (quoting Hubbard, 222 N.J. at 262). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid. (citing State v. Hathaway, 222 N.J. 453, 467 (2015)).

A. The Seizure of Drugs on September 1, 2015

Defendant challenges the court's denial of his motion to suppress evidence seized on September 1, 2015 after he was ordered

to exit his vehicle following a motor vehicle stop, handcuffed, and an officer saw a plastic bag containing marijuana and pills in defendant's open pants pocket. Defendant argues the court erred in finding the search was permissible under the plain-view exception to the warrant requirement, because the officer's observation of the plastic bag was the result of an impermissibly prolonged seizure of defendant following the stop.

Based on the evidence presented at the suppression hearing, the court found that on August 25, 2015, Paulsboro Police were dispatched to investigate a shooting where the victim reported being shot and injured by an individual named Levan Banks. A complaint-warrant was issued charging Banks with four offenses related to the shooting. During the investigation, Paulsboro Patrolman Adam Chiolam was informed Banks was seen driving a black Dodge Maxum with a specified license plate number.

On September 1, 2015, Chiolam saw a black Dodge Maxum with the specified license plate number. The front driver's side window was down, and Chiolam believed he saw Banks behind the wheel of the vehicle. Chiolam could not immediately pursue the vehicle because he was investigating another unrelated serious incident at the time, but he advised the police department by radio of his observations and the location of the Dodge Maxum.

After completing his investigation of the unrelated incident, Chiolam patrolled the area he last observed the Dodge Maxum. He saw the vehicle and again thought he observed Banks driving. Chiolam effectuated a stop of the vehicle, alerted other patrol officers by radio that he had initiated a "high risk motor vehicle stop" and requested assistance.

Chiolam testified he ordered the driver, who was later identified as defendant, to turn off the vehicle, extend his hands out of the vehicle, throw the vehicle's keys, exit the vehicle and stand facing away from Chiolam. The driver was then ordered to walk backwards toward Chiolam.

The court found that Chiolam waited for back-up, which "came in the form of Officer [David] Belbin" and other officers. Chiolam and the other officers approached the vehicle to determine if it contained any other occupants. While that occurred, Belbin took control of defendant, "not to arrest him, but to secure him during the course of the high risk stop."[5] Chiolam detected an odor or marijuana coming from the passenger compartment of the vehicle, and saw a partially consumed bottle of alcohol and a large butcher

---

[5] The evidence showed defendant was handcuffed by Belbin, and Belbin intended to conduct a pat-down search of defendant for weapons. He did not, however, immediately conduct a pat-down search because he first observed the plastic bag containing marijuana and pills in defendant's open pants pocket.

knife on the vehicle's floor. There were no other occupants in the vehicle.

While Chiolam made his observations of the vehicle, Belbin stood next to defendant and saw a plastic bag containing what he knew to be marijuana and pills in a large open pocket in defendant's pants.[6] Belbin seized the plastic bag from defendant's pocket. After Chiolam made his observations of the vehicle's interior, he was informed by one of the officers who recognized defendant that the driver was not Banks, but instead was defendant.

At the suppression hearing, defendant expressly conceded the validity of the motor vehicle stop and Belbin's decision to "temporarily handcuff him" for the purpose of conducting a pat-down search while Chiolam and the other officers determined if there were any other occupants in the vehicle. Defense counsel advised the court defendant "does not challenge [or] think it was unreasonable for the officers to clear the vehicle for other individuals who could be armed and dangerous." Defendant further conceded the video recording of the incident confirmed Chiolam's belief defendant was Banks when he ordered defendant out of the

---

[6] It was later confirmed the bag contained marijuana, cocaine and 3,4 Methylenedioxy-ethylcalthinone. As noted, a jury convicted defendant of possession of cocaine and 3,4 Methylenedioxy-ethylcalthinone.

vehicle, and Belbin was properly in the viewing area when he made his observations of the contents of defendant's pants pocket.

Defendant's singular argument before the court was suppression of the evidence was required because Belbin's testimony he could see into the pants pocket was not credible. More particularly, defendant argued Belbin's position near defendant did not allow him to see into the pants pocket, and the pocket was covered with a flap and therefore Belbin could not have directly looked into the pocket as he alleged. The court rejected the argument, making findings of fact limited to defendant's sole contention that Belbin was not credible.

The court found credible Belbin's testimony he was in position to see the bag, and that the pants pocket was sufficiently large and open to permit his observations. The court determined the bag was properly seized under the plain-view exception to the warrant requirement because Belbin was lawfully in the viewing area, inadvertently observed the plastic bag and immediately recognized it contained contraband and evidence of a crime. See State v. Earls, 214 N.J. 564, 592 (2013) (finding the plain-view exception to the warrant requirement is established where the officer is "lawfully in the viewing area," the discovery of the items is inadvertent and it was immediately apparent what was seen

constitutes contraband, evidence of a crime or is "otherwise subject to seizure").[7]

The record reveals substantial credible evidence supporting the court's fact-findings, see State v. Elders, 192 N.J. 224, 243-44 (2007), and its determination Belbin properly seized the plastic bag containing the drugs because it was in plain-view. For those reasons, we affirm the court's order denying the motion to suppress the evidence seized from defendant's pocket on September 1, 2015.

On appeal, defendant abandons the contention Belbin could not have seen into defendant's pocket and, for the first time, claims the seizure was unlawful because Belbin's plain-view discovery of the plastic bag followed an impermissibly prolonged seizure of his person following his exit from the vehicle. See Rodriquez v. United States, 575 U.S. ___, ___, 135 S. Ct. 1609, 1616 (2015) (finding extending a traffic stop beyond the time reasonably required to complete the purpose of the stop is unlawful); Terry v. Ohio, 392 U.S. 1, 20 (1968) (holding a determination of reasonableness of an investigatory stop requires consideration of "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances

---

[7] In State v. Gonzales, 227 N.J. 77, 100-01 (2016), the Court prospectively modified the plain-view doctrine, eliminating the inadvertence requirement of the prior standard.

which justified the interference in the first place"); <u>Dunbar</u>, 229 N.J. at 533-34 (citation omitted) (finding that a police officer may not conduct "incidental checks . . . 'in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual'"); <u>State v. Coles</u>, 218 N.J. 322, 344 (2014) (finding "the scope of the continued detention must be reasonably related to the justification for the initial interference").

We decline to address defendant's argument because it was not asserted before the motion court, and does not involve jurisdictional or public interest concerns. <u>See</u> <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009); <u>State v. Arthur</u>, 184 N.J. 307, 327 (2005); <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973). Moreover, defendant's decision to focus solely on Belbin's ability to see the plastic bag as the basis for his challenge to the seizure of the evidence rendered it unnecessary for the motion court to make the credibility determinations and fact-findings necessary for resolution of his newly-minted claim there was an impermissibly prolonged seizure of his person. "Parties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." <u>State v. Witt</u>, 223 N.J. 409, 419 (2015). Here, "[t]he trial court . . . was never called on to rule on the lawfulness," <u>ibid.</u>, of the alleged prolonged

seizure of defendant prior to Belbin's plain-view observation of the plastic bag, and thus the issue "was not preserved for appellate review," ibid.

B. The Seizure of the Gun and Drugs on November 28, 2015

Defendant next challenges the court's denial of his motion to suppress evidence seized following a November 28, 2015 stop of a pick-up truck he drove with his girlfriend as a passenger. More particularly, following the stop and subsequent positive canine sniff of his vehicle, the police discovered a handgun under the vehicle's front seat and controlled dangerous substances in defendant's possession. The discovery of the gun and drugs resulted in the seven charges in the October 2016 indictment.

The evidence presented during the suppression hearing showed that at approximately 9:24 p.m. on November 28, 2015, Mantua Township Police Department patrolman Cody Moroz stopped the pick-up truck because it had tinted windows. The court found that following the stop, Moroz approached the vehicle, defendant provided his driver's license and girlfriend provided the vehicle's registration and insurance card. Moroz asked defendant where he was traveling and defendant said "Paulsboro," but the vehicle had been traveling in a direction away from Paulsboro. Moroz observed an unopened beer can between defendant and his girlfriend in the vehicle. Moroz testified that when he interacted

with defendant as he sat in the vehicle there was no evidence defendant was impaired.

Moroz testified he returned to his police car and determined defendant's license and the vehicle's registration and insurance card were valid. He returned to the vehicle and, based on his observation of the beer can, requested that defendant exit so he could assess whether defendant had been drinking. As defendant walked from the vehicle, he held his wallet in his hand and items fell from the wallet that defendant retrieved from the ground. Moroz observed that defendant's pupils were slightly dilated, but testified he did not detect the odor of alcohol on defendant's breath, defendant's speech was not slurred, and defendant answered his questions without difficulty. Moroz also testified that based on his observations, he determined defendant was not impaired.

Moroz asked defendant where he and his girlfriend were traveling, and defendant said they were "coming from Home Depot," and going to a WaWa store to purchase a sandwich for her. Defendant avoided eye contact with Moroz, and instead looked at his vehicle and the road.

Moroz also spoke with defendant's girlfriend, who explained she and defendant had just left a Home Depot store and were going "down there" to shop but did not have any "store in mind." Moroz asked her if they were traveling to "Deptford" and she quickly

said "yes." Moroz found the response odd because it was late in the evening, the stores in Deptford would be closing shortly and she readily agreed to his random suggestion of "Deptford" as defendant and Lewis's destination.

Due to defendant and his girlfriend's conflicting accounts about where they were traveling, Moroz continued asking questions. He asked defendant if he had previously been arrested for narcotics. Defendant initially said "no," but immediately changed his response to "yes" and explained he had been arrested and "got blamed" but was "let . . . go." The court found Moroz observed defendant was "very fidgety, was constantly licking his lips, and moving them from left to right[,]" and that "[d]efendant's lips were white and chapped, and . . . [defendant] did not seem to be able to control his blinking because at times he would squint and just close one eye."

Moroz asked if there were any drugs in the car, and defendant said "no." Moroz asked defendant for consent to search the vehicle, and defendant denied the request. Moroz then told defendant a canine would be brought to the scene to conduct a sniff of the vehicle. Moroz testified the canine could sniff only for the presence of narcotics.

Fourteen minutes after the initial motor vehicle stop, Moroz requested that a neighboring police department conduct a canine

sniff of defendant's vehicle because a canine was not available from his department. Approximately thirty-one minutes later, a canine and police officer arrived and conducted an exterior sniff of the vehicle. The canine reacted positively to the vehicle and, as a result, Moroz searched the vehicle and found a gun under the front seat.

Moroz arrested defendant and his girlfriend. During a search incident to their arrests, defendant was found in possession of controlled dangerous substances. Moroz advised defendant of his Miranda rights. After being transported to the police station, defendant was searched again and additional controlled dangerous substances were found. Defendant also admitted ownership of the handgun after Moroz advised him that he and his girlfriend would be charged with possession of the gun.

The court denied defendant's suppression motion, finding that "[d]uring the course of the stop, reasonable suspicion arose justifying calling for a [canine] unit for an exterior sniff test of the vehicle." The court based its determination upon the following findings:

> [F]ollowing the motor vehicle stop, . . . Mroz [sic] observed an unopened beer can in plain view; the occupants of the vehicle provided differing accounts as to where they were heading; [d]efendant's nervous demeanor by looking away and avoiding eye contact; [d]efendant's constant licking and moving his

16

A-2432-16T2

lips, as well as [d]efendant's constant squinting and shutting one eye; [d]efendant's repeated dropping of items and fumbling with them: and [d]efendant's extensive narcotics history, which he initially denied.

The court concluded those observations, "combined with . . . Moroz's training and experience, and rational inferences drawn therefrom, . . . gave rise to a sufficient reasonable suspicion to call for a [canine] officer."

Defendant argues the police impermissibly prolonged the motor vehicle stop "by half an hour in order to effectuate" the canine sniff that provided the basis for the search of the vehicle and recovery of the gun, as well as defendant's arrest and the recovery of the drugs in his possession. We agree and reverse the court's suppression order.

"A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." Dunbar, 229 N.J. at 532. "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)). Here, Moroz properly stopped defendant's vehicle because the pick-up truck had tinted windows. See State v. Cohen, 347 N.J. Super. 375, 380 (App. Div. 2002) (noting "that N.J.S.A. 39:3-

74 prohibits the use of tinted windows [that] fail to meet the applicable standard now set forth in N.J.A.C. 13:20-33.7"). Defendant does not argue otherwise.

During a lawful traffic stop, a police officer is permitted to "inquire 'into matters unrelated to the justification for the traffic stop,'" Dunbar, 229 N.J. at 533 (quoting Arizona v. Johnson, 555 U.S. 323, 333 (2009)), and "may make 'ordinary inquiries incident to [the traffic] stop,'" ibid. (alteration in original) (quoting Rodriguez, 575 U.S. at ___, 135 S. Ct. at 1615). "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances 'give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'" State v. Dickey, 152 N.J. 468, 479-80 (1998) (alteration in original) (quoting United States v. Johnson, 58 F.3d 356, 357-58 (8th Cir. 1995)).

The inquiries, however, "may not [be performed] 'in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'" Dunbar, 229 N.J. at 536 (quoting Rodriguez, 575 U.S. at ___, 135 S. Ct. at 1615). A detention following a lawful stop "must be reasonable both at its inception and throughout its entire execution." Coles, 218 N.J. at 344. Prolonging a traffic stop "beyond the time reasonably

required to complete the . . . stop's purpose . . . is unlawful absent independent reasonable suspicion of criminal activity." Dunbar, 229 N.J. at 536.

In determining "whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria."  Dickey, 152 N.J. at 477 (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)).  "An officer does not need a warrant to make [an investigatory] stop if it is based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity."  State v. Rodriquez, 172 N.J. 117, 126-27 (2002) (citation omitted).  Our Supreme Court has declared the "standard for reasonable suspicion required to uphold an investigative detention is lower than the standard of probable cause to justify an arrest[,]" State v. Nishina, 175 N.J. 502, 511 (2003) (citation omitted), and "must be based on the law enforcement officer's assessment of the totality of the circumstances he [or she] faced," ibid. (quoting State v. Davis, 104 N.J. 490, 504 (1986)).  A detention, however, becomes unlawful when it is longer than is reasonably necessary to diligently investigate an officer's reasonable suspicion of criminal activity.  Dickey, 152 N.J. at 476-79.

In Dunbar, the Court defined "the proper basis for a canine sniff during a lawful traffic stop."  229 N.J. at 538.  A canine sniff of a vehicle may be properly conducted without "reasonable suspicion independent from the justification for a traffic stop," but the sniff "may not add time to the stop" in the absence of a reasonable and articulable suspicion.  Id. at 540.  It is only where "an officer has articulable reasonable suspicion independent from the reason for the traffic stop that a suspect possesses narcotics, the officer may continue a detention to administer a canine sniff."  Ibid.  (emphasis added); accord Illinois v. Caballes, 543 U.S. 405, 408 (2005).

Here, although the court did not expressly find Moroz had an articulable reasonable suspicion defendant possessed narcotics, the court implicitly concluded that he did.  The court found Moroz had an "articulable reasonable suspicion" based in part on defendant's "extensive narcotics history."  The finding, however, is not supported by any evidence in the record and therefore does not provide a proper basis for the court's determination Moroz had an articulable reasonable suspicion defendant possessed controlled dangerous substances.  Cf. Dunbar, 229 N.J. at 538 (finding we defer to a motion court's fact-finding supported by sufficient evidence in the record).

The record is bereft of any evidence Moroz was aware defendant had an extensive narcotics history or that Moroz reasonably believed he did. The only evidence was that defendant first told Moroz he had never been arrested for drugs, and then immediately stated he had been arrested but was let go. Although knowledge of a defendant's prior drug history may be considered as a circumstance supporting a reasonable suspicion of criminal activity, State v. Privott, 203 N.J. 16, 28-29 (2010) (finding the officer's knowledge of the defendant's prior narcotics arrests and gang association in part supported an investigatory stop); State v. Mann, 203 N.J. 328, 339-40 (2010) (finding the officer's knowledge the defendant was a known drug dealer in part supported a reasonable and articulable suspicion for an investigatory stop), there is no evidence showing Moroz knew defendant had a prior narcotics history, extensive or otherwise, supporting a reasonable suspicion defendant possessed illicit drugs during the motor vehicle stop.

The court's conclusion Moroz had an articulable reasonable suspicion of criminal activity based on his "training and experience" is also not supported by the record. Moroz never testified he based his determination there was reasonable suspicion justifying the request for the canine upon his prior

training and experience.[8] He did not testify, for example, that based on his training and experience he concluded defendant's actions or appearance provided a reasonable suspicion of drug possession.

"When determining if the [police] officer's actions were reasonable," the court must consider the reasonable inferences that the police officer is entitled to draw "in light of his experience." State v. Arthur, 149 N.J. 1, 8 (1997) (quoting Terry, 392 U.S. at 27). But here there is no evidence Moroz had any experience supporting an articulable reasonable suspicion defendant possessed drugs based on the circumstances presented. Moroz testified only that he worked as a "Class II Special Officer" for "the summer months of 2013" in a municipality and for a year in another municipality prior to being hired as full-time patrolman in Mantua Township in 2014, but he did not provide any information about his experience during those periods of employment. Similarly, Moroz was employed as a patrolman for one year prior

---

[8] The only testimony Moroz provided that is arguably based on his experience is that when he saw the beer can he thought defendant might have been drinking because impaired drivers will often take a beer "for the road." That observation, even if based on his experience, did not support a reasonable suspicion defendant possessed drugs. His suspicion defendant may have consumed alcohol prior to the stop is unrelated to the possession of drugs and Moroz testified that prior to his request for the canine, he determined defendant was not impaired.

to the November 28, 2015 motor vehicle stop, but other than stating he made traffic stops and arrests, there is no evidence he made any prior drug arrests or had any experience supporting a reasonable suspicion defendant possessed drugs based on the circumstances presented during the motor vehicle stop.

Moroz testified he attended a single training class covering circumstances where a person is smuggling and selling narcotics, including "signs to look for deceptive behavior in that regard." He did not, however, testify that defendant exhibited any of those "signs" or that any of the circumstances showing a person is smuggling or selling narcotics about which he was taught were present during the motor vehicle stop. Thus, there is no evidence supporting the court's determination Moroz's experience and training provided a basis for a reasonable suspicion defendant possessed any controlled dangerous substances when Moroz requested the canine.

To justify defendant's prolonged detention while awaiting the canine's arrival, Moroz must have had a particularized articulable reasonable suspicion that defendant possessed illicit drugs. Dunbar, 229 N.J. at 538. The canine could only sniff for controlled dangerous substances, so there was no purpose for defendant's prolonged detention other than to determine if defendant possessed such substances.

In determining whether there were objective facts supporting an articulable reasonable suspicion defendant possessed illicit drugs, we consider the totality of the circumstances presented. State v. Stovall, 170 N.J. 346, 356 (2002). "Neither 'inarticulate hunches' nor an arresting officer's subjective good faith can justify an infringement of a citizen's constitutionally guaranteed rights. Rather, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" Arthur, 149 N.J. at 8 (alteration in original) (citations omitted). "Moreover, the court should scrutinize the reasons for the particularized suspicion." State v. Amelio, 197 N.J. 207, 212 (2008) (citation omitted).

Here, when stripped of the motion court's unfounded reliance on Moroz's knowledge of defendant's purported extensive narcotics record and Moroz's experience and training, we are convinced there are insufficient objective facts supporting an articulable reasonable suspicion defendant possessed illicit drugs. The court found only two other factors supporting its determination there was reasonable suspicion justifying defendant's prolonged detention awaiting the canine's arrival. The court first cited Moroz's observations of defendant's nervous demeanor, including his dropping of items from his wallet and later a cigarette, his

failure to make eye contact with Moroz, the licking and movement of his lips and his squinting and shutting of one eye. Second, the court relied on defendant and his girlfriend's inconsistent versions of where they were traveling.

"[A]nxiety or nervousness in the face of approaching police officers can be common among the innocent and cannot alone betoken criminal activity or justify reasonable suspicion that an anxious or nervous person had or was engaged in criminal activity." State v. Williams, 381 N.J. Super. 572, 589 (App. Div. 2005), rev'd on other grounds, 192, N.J. 1 (2007). An "appearance of nervousness is not sufficient grounds for the reasonable and articulable suspicion necessary to extend the scope of a detention beyond the reason for the original stop" of a motor vehicle. Carty, 170 N.J. at 648. It is only where a defendant's nervousness is accompanied by other factors that it supports a reasonable suspicion of criminal activity. Mann, 203 N.J. at 339-40; see also Stovall, 170 N.J. at 367 (collecting cases where a suspect's nervousness in part supported reasonable suspicion for an investigatory detention).

In Elders, 192 N.J. at 248-50, the Court determined the police lacked reasonable suspicion that the defendants were engaged in criminal activity justifying a request to search their vehicle. The Court affirmed the trial court's finding the police did not

have a reasonable and articulable suspicion "that drugs [were] being secreted in the vehicle" based on their observations of the "defendants' nervous behavior, their conflicting statements" about where they were traveling and their vehicle's "fallen-off gas tank." Ibid. (alteration in original). Finding that whether the police "possessed the necessary suspicion [was a] close call[]," and that "nervousness and conflicting statements, along with indicia of wrongdoing, can be cumulative factors in a totality of circumstances analysis that leads to a finding of reasonable and articulable suspicion of ongoing criminality[,]" the Court affirmed the trial court's determination that the officer's observations "gave rise to nothing more than a 'hunch' that 'something was wrong.'" Id. at 250.

Moroz's observations of defendant's nervous movements and defendant and his girlfriend's conflicting versions of where they were traveling did not support a reasonable and articulable suspicion that defendant possessed a controlled dangerous substance because they are untethered to any other "indicia of wrongdoing." Ibid. Moroz determined defendant was not under the influence of drugs, and the record is otherwise devoid any of any other circumstances presented supporting a reasonable suspicion defendant possessed illicit drugs. See, e.g., Privott, 203 N.J. at 29 (finding the officer's knowledge of the defendant's prior

narcotics arrests and gang association in part supported a reasonable suspicion of criminal activity); Stovall, 170 N.J. at 358 (finding it permissible for a police officer to rely on a "drug courier profile" as a circumstance supporting reasonable suspicion); Williams, 381 N.J. Super. at 583-84 (finding the defendant's presence in an area known for drug trafficking supported a reasonable and articulable suspicion the defendant possessed a controlled dangerous substance). Therefore, the totality of the circumstances here is insufficient to establish the articulable reasonable suspicion defendant possessed controlled dangerous substances necessary to justify defendant's delayed and prolonged detention while waiting for the canine. Dunbar, 229 N.J. at 540.

We reverse the court's order denying defendant's motion to suppress the gun from the vehicle under the October 2016 indictment. Because the gun was seized illegally, we also reverse the court's denial of defendant's request to suppress the drugs found during the searches incident to defendant's arrest for possession of the gun at the scene of the motor vehicle stop and later at the police station. See State v. Richards, 351 N.J. Super. 289, 308 (App. Div. 2002) (finding that evidence seized following an illegal protective search must be suppressed under the exclusionary rule).

A-2432-16T2

## C.  Defendant's Statements on November 28, 2015

Defendant also claims the court erred by failing to suppress statements he made at the police station following his arrest on November 28, 2015.  Defendant contends the State failed to prove beyond a reasonable doubt that defendant knowingly waived his Miranda rights and, therefore, the court erred by finding his statement acknowledging ownership of the gun was inadmissible.  We reverse the court's order denying defendant's suppression motion because he made the statements following his arrest, which we have determined was founded solely on the illegal seizure of the gun from the vehicle and drugs from his possession.  See State v. Rosario, 229 N.J. 263, 277 (2017); see also Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

Absent that determination, we would otherwise reject defendant's claim the State did not prove he knowingly and voluntarily waived his Miranda rights.  The court's determination that Moroz properly administered the Miranda rights and defendant knowingly and voluntarily waived his rights is supported by substantial credible evidence.  See Elders, 192 N.J. at 243-44. Defendant's argument to the contrary lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).  In any event, because defendant's statements were made following his

arrest based on illegally seized evidence, the court erred by denying his suppression motion.

## III.

In its sentencing determination under the 2015 indictment, the court found aggravating factor one, "[t]he nature and circumstances of the offense," N.J.S.A. 2C:44-1 (a)(1), and gave it "very slight weight," and gave substantial weight to aggravating factors three, the risk defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), six, the extent and seriousness of defendant's prior record, N.J.S.A. 2C:44-1(a)(6), and nine, the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court did not find any mitigating factors, see N.J.S.A. 2C:44-1(b)(1)-(13), concluded it was clearly convinced the aggravating factors substantially outweighed the non-existent mitigating factors and imposed a five-year sentence with a two-year period of parole ineligibility.

Defendant challenges only the sentence imposed by the court on the charges in the 2015 indictment, claiming the court erred by finding aggravating factor one, and by basing its sentencing decision on a finding defendant was a "professional drug dealer."

We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214

N.J. 594, 606 (2013)).  We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) the application of the law to the facts does not "shock[] the judicial conscience."  State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).  When reviewing a trial court's sentencing decision, we will not "substitute [our] judgment for that of the sentencing court."  State v. Fuentes, 217 N.J. 57, 70 (2014) (citation omitted).

Applying these standards, we are persuaded the court did not abuse its discretion by finding aggravating factor one, the nature and circumstances of the offense.  N.J.S.A. 2C:44-1(a)(1). Defendant was convicted of possession of 10.94 grams of cocaine and 1.02 grams of 3,4 Methylenedioxy-ethylcalthinone.  The court found aggravating factor one based on the weight of the controlled dangerous substances, reasoning the weight of each drug exceeded the "trace amount" required to establish the commission of the third-degree possessory offenses.  See, e.g., State v. Wells, 336 N.J. Super. 139, 144-45 (Law Div. 2000) (finding possession of a trace amount of cocaine constitutes commission of a possessory drug offense under N.J.S.A. 2C:35-10).

Possession of drugs in excess of the amounts required to prove the offense charged supports a finding of aggravating factor one. See State v. Henry, 418 N.J. Super. 481, 492 (App. Div. 2010) (finding "a court may consider as an aggravating factor facts reflecting that a defendant exceedingly satisfied a quantity-related element of an offense"); State v. Varona, 242 N.J. Super. 474, 490 (App. Div. 1990) (finding evidence showing the defendant possessed seven times the amount of cocaine required to prove a first-degree possession with intent charge supports a finding of aggravating factor one); State v. Toro, 229 N.J. Super. 215, 226 (App. Div. 1988) (finding "the 'nature and circumstances' of a drug offense include the amount of drugs involved").[9] Thus, the court did not abuse its discretion by relying on the weight of the drugs defendant possessed to support its finding of aggravating factor one and, in our view, properly tempered its finding by assigning only very slight weight to the factor.

The sentence was also imposed, in part, based on the court's finding "defendant is a professional drug dealer" and conclusion that "unless there's a substantial change in attitude, it is this [c]ourt's feeling . . . defendant is highly likely to reoffend."

---

[9]  Our decision in Toro was reversed on other grounds in State v. Velez, 119 N.J. 185, 187 (1990).

Although the court did not expressly rely on its finding to support its determination of a particular aggravating factor,[10] it clearly relied on defendant's putative status as a "professional drug dealer" as part of its sentencing calculus.

The court erred, however, because its finding is not supported by credible evidence.  See State v. Dalziel, 182 N.J. 494, 505 (2005) (noting the "well-established rule that aggravating and mitigating factors must be supported by credible evidence"). Defendant has a lengthy and varied criminal and offense history, but it shows only one conviction for distribution of a controlled dangerous substance, marijuana, for an offense committed in 2000. His other drug related offenses — a 1997 juvenile offense, and three as an adult — were possessory crimes.  Under the 2015 indictment, defendant was not charged with distribution, was found not guilty of four possession with intent to distribute charges, and was convicted of two possessory offenses.[11]  Moreover, the presentence investigation report and the sentencing record is otherwise bereft of any evidence defendant is a professional drug

---

[10]  The court's determination, if supported by credible evidence, would support a finding of aggravating factors three and nine. See N.J.S.A. 2C:44-1(a)(3), (9).

[11]  Similarly, defendant pleaded guilty under the August 2016 indictment to possession of a controlled dangerous substance.

dealer.  We therefore vacate the sentence imposed by the court under the 2015 indictment, and remand for resentencing.

We further observe that the judgment of conviction under the 2015 indictment incorrectly states that the sentence imposed shall "run consecutive to #15-12-[00]766[-I] and #16-08-[00]670[-I]." This is an obvious error because the sentence imposed under Indictment No. 15-12-0766 could not run consecutive to itself.  At the sentencing proceeding, the court actually ordered that the sentence imposed under Indictment 15-12-00766 run consecutive to the sentences imposed under Indictment Nos. 16-10-0801 and 16-08-0670.  On remand, if the court imposes a consecutive sentence on the charges for which defendant was convicted under the 2015 indictment, the judgment of conviction should accurately reflect the sentences imposed.

We reverse the court's order denying defendant's suppression motion and reverse his conviction under the October 2016 indictment (Gloucester County Indictment No. 16-10-0801), and remand for further proceedings.  We affirm the court's order denying defendant's suppression motion and affirm his conviction under the 2015 indictment (Gloucester County Indictment No. 15-12-0766).  We vacate the court's sentence under the 2015 indictment (Gloucester County Indictment No. 15-12-0766) and remand for resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION