**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2334-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EARL L. BARLEY, a/k/a
EARLY BARLEY and EARL
T. BARLEY,

    Defendant-Appellant.

_____

Submitted March 24, 2021 – Decided April 19, 2021

Before Judges Fuentes and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Number 19-06-1414.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura A. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Earl L. Barley appeals from a December 13, 2019 judgment of conviction after trial for second-degree unlawful possession of a handgun and certain persons not to possess weapons. We affirm for the reasons that follow.

I.

The following facts are derived from the record. On May 28, 2018, Officer John Borelli of the Franklin Township Police Department observed a black, four-door Nissan sedan operated by defendant with a tinted windshield and front side windows in violation of N.J.S.A. 39:3-75 and tinted-out rear tag cover, in violation of N.J.S.A. 39:3-33, crossing the intersection near Lincoln Avenue. Officer Borelli drove his marked police car to the front of a Dollar General store situated in close proximity to Lincoln Avenue and continued to observe defendant.

When defendant saw Officer Borelli's car, he lowered the front tinted windows and quickly pulled into the Dollar General parking lot. After parking his vehicle, defendant "ran" into the store and returned to his car shortly thereafter without any shopping bags. Defendant again lowered the front tinted windows and drove off. At 5:25 p.m., Officer Borelli followed the Nissan and

2

initiated a motor vehicle stop based on motor vehicle equipment violations, which was captured on a dash camera.

After approaching the Nissan on the passenger side and identifying himself, Officer Borelli advised defendant, the registered owner, he was stopped for equipment violations and requested his credentials. Defendant stated, "why the f--- are you pulling me over?" He began to sweat after Officer Borelli asked if there was anything illegal in the car. After that, defendant started to breathe heavily and displayed other signs of anxiety in the face of cool weather.

Upon receiving defendant's documents, Borelli ran his credentials, checked for outstanding warrants, and performed a search of defendant's criminal history in light of his suspicious behavior. The criminal history search revealed defendant had a history of narcotics distribution offenses. Officer Borelli requested consent to search defendant's vehicle, which he declined. Defendant called 9-1-1 to request a supervisor come to the scene. At approximately 5:40 p.m., Officer Borelli requested K-9 assistance and twelve minutes later, Sergeant Adam Shaw of the Vineland Police Department arrived with Pikke, his K-9 partner.

When the K-9 arrived at the scene, the officers escorted defendant to the rear of one of the patrol cars so Pikke could conduct an exterior scent sniff of

3

the Nissan. Pikke alerted to the presence of narcotics in the car, leading to a search of the vehicle. The search yielded a loaded .380 semi-automatic handgun in the glove box, a blue sock next to the handgun containing ammunition and one hollow-point bullet, two cell phones, and approximately 55.23 grams, the equivalent of two-and-one-half ounces of marijuana, in a vacuum-sealed bag in the trunk.

Defendant was placed under arrest, and a search of his person incident to arrest uncovered approximately 300 empty Ziploc "dime bags"[1] in his jacket pocket. On June 25, 2019, an Atlantic County grand jury returned Superseding Indictment Number 19-06-1414, charging defendant with second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b)(1) (count one); second-degree possession of a firearm while committing a controlled dangerous substance (CDS) offense, contrary to N.J.S.A. 2C:39-4.1(a) (count two); third-degree possession of CDS, marijuana, with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) (count three); fourth-degree possession of drug paraphernalia, Ziploc bags, with intent to distribute, contrary to N.J.S.A.

---

[1] Detective Jason Salter was qualified at trial as an expert in the field of narcotics and narcotics distribution. He defined "dime bags" as "little [Z]iploc[] bags that are commonly used for distributing drugs" which are "sold for approximately [ten dollars]" and typically contain "around a gram."

A-2334-19

2C:36-3 (count four); fourth-degree possession of a hollow-point bullet, contrary to N.J.S.A. 2C:39-3(f) (count five); and second-degree certain persons not to have weapons, contrary to N.J.S.A. 2C:39-7(b) (count six).[2]

Prior to trial, defendant filed a motion to suppress the seized items based on the charges in the original indictment. Defendant also moved to dismiss the indictment. Officer Borelli was the only witness who testified at the March 27, 2019 suppression hearing. The trial court reserved decision on the motion to suppress and issued a comprehensive written decision on April 2, 2019, denying the motion.

In its decision, the trial court found the K-9 sniff did not violate defendant's Fourth Amendment rights and did not prolong the stop. The court determined "[t]he twenty-seven-minute-period" between the time Officer Borelli obtained defendant's record from dispatch and the arrival of the K-9

---

[2] The original indictment, number 18-08-1255, was filed on August 7, 2018, and charged defendant with fourth-degree possession of CDS paraphernalia with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) (count one); fourth-degree possession of CDS paraphernalia with intent to distribute, contrary to N.J.S.A. 2C:36-3 (count two); second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b)(1) (count three); second-degree possession of a weapon while in the course of committing a CDS offense, contrary to N.J.S.A. 2C:39-4.1(a) (count four); fourth-degree possession of a hollow point bullet, contrary to N.J.S.A. 2C:39-3(f) (count five); and second-degree certain persons not to possess a weapon, contrary to N.J.S.A. 2C:39-7(b)(3) (count six).

A-2334-19

officer "was a reasonable delay under the circumstances." Noting that Officer Borelli had an independent, reasonable, and articulable suspicion necessary to justify any alleged delay, the court stated:

> Officer Borelli took a reasonable approach, in stopping the defendant and asking for his credentials. The defendant immediately reacted with hostility by asking "why the f[---] are you pulling me over" after the officer had already advised the defendant that he was being stopped due to his tinted window and obstructed license plate.
>
> There is nothing to suggest that the officer was confrontational or aggressive toward the defendant to warrant the defendant calling [9-1-1]. Thus, the [9-1-1] call is suspicious and adds to the officer[']s reasonable articulable suspicions that criminality is accruing . . . .
>
> The defendant was not simply nervous as argued by the defense. He was argumentative as soon as he was stopped, [and] he became increasingly agitated as evidenced by his [9-1-1] call. Officer Borelli observed the defendant make a quick turn into the parking lot, roll down his front driver and passenger windows, run quickly into a store, only to re[turn] without a purchase. From his experience as a patrol officer, having stopped over 100 vehicles, he reasonably believed that the defendant was attempting to evade the traffic stop. The officer then properly checked the defendant's credentials through dispatch and learned that the defendant had prior convictions, including CDS related convictions. The officer returned to the defendant's car and the defendant continued to act excited, perspiring and breathing heavily. These behaviors coupled with the defendant's other actions, including calling [9-1-1]

6

and initially attempting to evade, and learning of his several convictions for distribution of narcotics, increased Officer Borelli's suspicion. The [c]ourt finds based upon the totality of the circumstances that Officer Borelli had reasonable and articulable suspicion to request the K-9 officer.

A memorializing order was entered.

After several counts were withdrawn and dismissed, the jury found defendant guilty on count one, second-degree possession of a weapon. In a bifurcated trial, the same jury found defendant guilty on count six, second-degree certain persons not to have weapons. The trial court sentenced defendant to a seven-year term of imprisonment with a three-and-one-half-year period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c), and a concurrent ten-year term of imprisonment with a five-year period of parole ineligibility for the certain persons offense. The State's motion to sentence defendant to a persistent offender extended term was denied.

Against this record, defendant raises the following arguments:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING A WARRANTLESS SEARCH OF HIS CAR BECAUSE THE [K-9] SNIFF UNLAWFULLY PROLONGED THE MOTOR VEHICLE STOP BEYOND THE TIME REQUIRED TO COMPLETE THE STOP'S MISSION AND THE

<span>A-2334-19</span>

SEARCH WAS NOT JUSTIFIED PURSUANT TO THE AUTOMOBILE EXCEPTION.

A. The [K-9] Sniff Unlawfully Prolonged The Time Needed To Complete The Main Purpose Of The Stop Without The Requisite Reasonable Suspicion Independent From The Stop Itself.

B. The Automobile Exception To The Warrant Requirement Did Not Justify The Search Of Defendant's Car.

POINT II

DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.

Having carefully reviewed the record, we affirm primarily for the reasons expressed in the thorough opinion of the trial court. We add the following remarks.

II.

When reviewing a trial court's ruling on a motion to suppress evidence, we "must uphold the factual findings underlying the trial court's decision so long as the findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotations omitted). Even if we may have reached a different conclusion, we give deference to the factual findings of the trial judge who was "substantially influenced by his opportunity

8

to hear and see the witnesses and to have the 'feel' of the case." Id. at 244; see also State v. Gonzales, 227 N.J. 77, 101 (2016) (applying the same review standard). However, we review the trial court's conclusions of law de novo. Elders, 192 N.J. at 252-53.

Appellate courts reviewing a trial court's ruling on a motion to suppress must evaluate whether the trial court's determination is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Lamb, 218 N.J. 300, 313 (2014) (quoting Elders, 192 N.J. at 244). A trial court's factual determinations are entitled to deference because "those findings 'are substantially influenced by [an] opportunity to see and hear witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

It is well established that to comply with the federal and New Jersey Constitutions, law enforcement officials generally must obtain a warrant before conducting a search of the person or private property of an individual, unless a recognized exception to the warrant requirement applies. State v. Witt, 223 N.J. 409, 422 (2015). One of those recognized exceptions is the so-called

"automobile exception."  Ibid. (citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)).

The search in this case, which occurred in 2018, is governed by our Supreme Court's seminal 2015 opinion in Witt.  As interpreted in Witt, the automobile exception allows a police officer to "conduct a warrantless search of a motor vehicle if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense."  Ibid. (quoting Labron, 518 U.S. at 940).  These principles in Witt revised prior New Jersey case law construing the automobile exception more restrictively, based upon assessment of exigent circumstances.  See State v. Peña-Flores, 198 N.J. 6 (2009), overruled by Witt, 223 N.J. 409 (reinstating and prospectively applying the automobile search standard from State v. Alston, 88 N.J. 211 (1981)).

Here, defendant argues the trial court erred in denying his motion to suppress for two reasons: (1) the K-9 sniff unlawfully prolonged the motor vehicle stop without the necessary reasonable suspicion to do so; and (2) the automobile exception to the warrant requirement would not have applied if the alleged improper K-9 search had not taken place.  We reject defendant's arguments.

"Both the United States and New Jersey Constitutions protect individuals from unreasonable searches and seizures." State v. Mann, 203 N.J. 328, 337 (2010); U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. These protections extend to the seizure of an individual that results when law enforcement officers initiate a traffic stop. Delaware v. Pruse, 440 U.S. 648, 653 (1979). Generally, a warrantless search and seizure is per se illegal "unless it falls within one of a very few specific and well-delineated exceptions." State v. Demeter, 124 N.J. 374, 379-80 (1991). The State has the burden of showing, by a preponderance of the evidence, that a warrantless search meets one of these exceptions. Alston, 88 N.J. at 230.

Because "[a] lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions," State v. Dunbar, 229 N.J. 521, 532 (2017), "[t]he State must show the stop was 'based on specific and articulable facts, which taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" State v. Alessi, 240 N.J. 501, 518 (2020) (quoting Mann, 203 N.J. at 338). Reasonable suspicion is a "lower standard" than probable cause, State v. Stovall, 170 N.J. 346, 356 (2002), and requires a reviewing court utilize an objective test to "assess whether 'the facts available to the officer at the moment of the seizure or the search

11

warrant a [person] of reasonable caution in the belief that the action taken was appropriate.'" Mann, 203 N.J. at 338 (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)). A court evaluating the constitutionality of a traffic stop must evaluate the totality of the circumstances to determine whether the requisite reasonable suspicion existed. Alessi, 240 N.J. at 518.

Police officers are permitted to make "ordinary inquiries incident to [the traffic] stop," Dunbar, 229 N.J. at 533 (alteration in original) (quoting Rodriguez v. United States, 575 U.S. 348, 355 (2015)), and may "inquire 'into matters unrelated to the justification for the traffic stop.'" Ibid. (quoting Arizona v. Johnson, 555 U.S. 323, 333 (2009)). If, in the course of these inquiries, "the circumstances 'give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'" State v. Nelson, 237 N.J. 540, 552-53 (2019) (alteration in original) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)).

An officer's ability to make such inquiries does, however, have a limit because a "detention must be reasonable both at its inception and throughout its entire execution." State v. Coles, 218 N.J. 322, 344 (2014). For example, if an officer executing an otherwise lawful traffic stop "prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual" by

pursuing incidental inquiries, then the traffic stop becomes unlawful.  Dunbar, 229 N.J. at 536.  Moreover, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."  Id. at 534 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).

K-9 sniffs frequently implicate this inquiry.  While "an officer does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a [K-9] sniff," our Supreme Court has held that "an officer may not conduct a [K-9] sniff in a manner that prolongs a traffic stop beyond the time required to complete the sniff's mission, unless he possesses reasonable and articulable suspicion to do so."  Id. at 540.  The question is not when the sniff occurred relative to the issuance of the ticket, but rather, whether the sniff added time to the traffic stop.  Id. at 536.

Defendant concedes that Officer Borelli had an articulable, reasonable suspicion to stop him; namely, for the tinted windshield and front side windows and the tinted-out rear tag cover.  Rather, defendant argues the actions undertaken by Officer Borelli, including checking defendant's criminal history and requesting a K-9 sniff, unlawfully prolonged the stop longer than necessary to issue the two motor vehicle violations summonses.

13

Here, the trial court had to make two inquiries: "whether the wait for the [K-9] unit's arrival prolonged [defendant's] traffic stop, and if so, whether the delay was justified by independent reasonable and articulable suspicion" that defendant was engaging in criminal activity.  Nelson, 237 N.J. at 553-54.  The trial court found the K-9 sniff did not prolong the stop because "[t]he twenty-seven minute period" between the time Officer Borelli obtained defendant's record from dispatch and the arrival of the K-9 officer "was a reasonable delay under the circumstances."  The trial court's findings in this regard were not an abuse of discretion and comported with our Court's holding in Dunbar.

## III.

Defendant argues that the sentence imposed was manifestly excessive.  "Appellate courts review sentencing determinations in accordance with a deferential standard," and "must not substitute [their] judgment for that of the sentencing court."  State v. Fuentes, 217 N.J. 57, 70 (2014).  We must affirm a sentence, absent the following exceptions:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record/ or (3) "the application of the guidelines to the fact of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

A-2334-19

> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

A sentencing court should review a range of information "to assess the defendant's history and characteristics, and to understand the nature and circumstances of his or her crime." Id. at 72. "In fixing a sentence within the statutory range, a judge must determine whether specific aggravating or mitigating factors are grounded in credible evidence in the record and then weigh those factors." State v. Case, 220 N.J. 49, 54 (2014). The trial court must also explain how it conducted the weighing process. Id. at 65; see also R. 3:21-4(g) (stating the trial court must "state reasons for imposing such a sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting the sentence"). Such a statement of reasons demonstrates "that all arguments have been evaluated fairly." State v. Bieniek, 200 N.J. 601, 609 (2010).

Additionally, a court imposing sentences for multiple offenses must bear in mind that "though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being." State v. Yarbough, 100 N.J. 627, 646 (1985) (citation omitted). Therefore, when crafting a sentence, the sentencing court should make

"an overall evaluation of the punishment for the several offenses involved." Ibid. (citing State v. Rodriguez, 97 N.J. 263, 274 (1984)).

To do so, a court examines criteria such as whether: (1) "the crimes and their objectives were predominantly independent of each other;" (2) "whether the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;" (3) "any of the crimes involved multiple victims;" and (4) "the convictions for which the sentences are to be imposed are numerous." Id. at 644. Because a trial court's imposition of a consecutive or concurrent sentence is discretionary, an appellate court reviews such a decision for abuse of discretion. State v. Spivey, 179 N.J. 229, 245 (2009).

Here, the sentencing court made specific findings with respect to the aggravating factors set forth in N.J.S.A. 2C:44-1(a):

> As to aggravating factor three, the risk that the [d]efendant will commit another offense, the [d]efendant has nine prior convictions. The [d]efendant has been already offered probation, county jail, state prison, parole. He has not been deterred. Given the [d]efendant's prior record and his continued lawlessness there is no question that given the opportunity he will reoffend. Only a lengthy prison sentence will interrupt his criminality. The [c]ourt gives this factor substantial weight.

16

As to aggravating factor six, the extent of the [d]efendant's prior criminal record and the seriousness of the offenses of which he has been convicted, the [d]efendant has an extensive criminal record. He has previously been convicted of a second-degree unlawful possession of a weapon yet he continues to disregard the laws even after being penalized for the same criminal offense. His crimes are serious and he continues to exhibit antisocial behavior even with prior sanctions. The [c]ourt gives this factor substantial weight.

As to aggravat[ing] factor nine, there is a strong need to deter this defendant especially and others generally from violating the law. The [d]efendant needs to be deterred and his prior sanctions, again, of county jail, state prison, parole and even treatment has not deterred the [d]efendant from continuing with his lawlessness. The [c]ourt gives this factor substantial weight.

Moreover, in rejecting defendant's argument that mitigating factors one and two, N.J.S.A. 2C:44-1(b)(1) and N.J.S.A. 2C:44-1(b)(2) applied, the sentencing court emphasized:

As to mitigating factor one, the [d]efendant's conduct neither caused nor threatened serious harm, the [c]ourt again does not give this any weight. The [d]efendant was in possession of a handgun which clearly threatens serious harm.

Mitigating factor two, the [c]ourt does not consider this factor. Clearly, the [d]efendant's possession of a gun shows that he contemplated conduct that would cause or threaten serious harm.

17

Following our review, we reject defendant's sentencing challenge. As noted, the mitigating factors were properly rejected by the trial court and the length of the sentence fell within the permissible range. Finally, the sentence does not shock our judicial conscience. For all of these reasons, we find defendant's sentence was not manifestly excessive.

Any remaining arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION