**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0369-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTONIO SUMMA, a/k/a
CORY MAYBEE, KEVIN
PARKER, JAMES SUMMA,
ANTI SUMMA, and
ANDREW SUMMA,

     Defendant-Appellant.

_____

Argued January 29, 2024 – Decided April 9, 2024

Before Judges Gilson and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 19-05-0449.

Morgan A. Birck, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Morgan A. Birck, of counsel and on the briefs).

Robert John Lombardo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris

County Prosecutor, attorney; Robert John Lombardo, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress illegal drugs seized without a warrant from a motor vehicle, defendant Antonio Summa pled guilty to second-degree possession of lysergic acid diethylamide (LSD) with intent to distribute in violation of N.J.S.A. 2C:35-5(b)(7). He was sentenced to five years in prison.

Defendant appeals from the order denying his motion to suppress the drugs, arguing that there were no exceptions justifying the warrantless search and seizure. We reject defendant's arguments because the trial court's factual findings support the series of progressive inquiries made by the police that led to the search of the vehicle and seizure of the drugs.

I.

We summarize the facts from the record on the motion to suppress. The trial court conducted a three-day evidentiary hearing, during which two witnesses testified: Patrol Officer David Chieppa and Detective John Granato. The court also reviewed documents and videos of recordings taken from the dash camera on Chieppa's vehicle.

A-0369-22

Officer Chieppa, a member of the Montville Police Department, testified that on August 30, 2018, he was on routine patrol. At approximately 11:30 p.m., he responded to a motor vehicle stop made by another officer. While at that scene, Chieppa was approached by a person who informed him that he had been driving behind a green van with a Pennsylvania license plate and that the van had abruptly turned into an industrial complex parking lot after observing the police's overhead lights. The motorist described the van's abrupt turn as suspicious.

Chieppa decided to investigate and drove to the nearby industrial complex located on Hook Mountain Road. After entering the parking lot, Chieppa saw a green van parked in the far southeast corner of the parking lot. The van's headlights were off, and Chieppa observed two occupants inside. Chieppa turned on his vehicle's spotlight, and both occupants got out of the van. The occupants were later identified as defendant and E.A.[1] Defendant exited from the driver's side and E.A. exited from the passenger side. Chieppa then observed defendant open the hood of the vehicle and look inside the engine bay.

---

[1] We use initials to refer to the other occupant because the charges against her were ultimately dismissed.

A-0369-22

At that point, Chieppa activated his emergency lights, exited his vehicle, and approached defendant and E.A. The officer asked what was going on, and defendant responded that they were experiencing some type of mechanical issue with the van.

Chieppa then requested defendant and E.A. to provide their identifications. E.A. provided a Colorado driver's license. Defendant responded that he had a driver's license, but it was expired, and he did not have the license on him. Chieppa then asked him for his name, birth date, and Social Security number. Defendant provided the name, "Andrew Summa," and initially stated that his birth date was October 14, 1959. It was later revealed that defendant had provided his brother's information and that defendant's license had been suspended.

Chieppa then asked defendant and E.A. where they were coming from and where they were headed. When their answers were not consistent, he asked E.A. to step aside so that he could question defendant. While speaking with defendant, Chieppa observed what he described as various scabs on defendant's arms and a musty odor emanating from defendant's person. He testified that those observations made him suspicious that defendant used illegal drugs. He

4

also testified that while walking around the van, he detected a faint odor of burnt marijuana.

Shortly after Chieppa arrived at the parking lot, he called for backup. Eventually, several other officers responded, including Sergeant Kenny. When Kenny arrived, he asked defendant for consent to search the vehicle. Defendant declined to provide that consent. Kenny then called for a K-9 dog and handler unit to come to the scene. The record does not clearly establish how long it took the K-9 unit to arrive, but it is clear that at least thirty minutes elapsed between when Chieppa first arrived and when the K-9 unit was called.

Detective Granato was the K-9 detective who arrived with two trained dogs. One of the dogs conducted a "free-air sniff" while passing around the exterior of the van. The dog alerted to the rear window of the van. Granato then opened the van and allowed the dog to search inside the van. While searching the interior of the van, the dog indicated on several items that might contain narcotics, including a metal lockbox. The police removed several items from the van, including a glass jar, a plastic box, glass pipes, and the metal lockbox. The glass jar, plastic box, and one of the glass pipes all had traces of residue, which was later identified as marijuana or marijuana wax.

5

The box was locked, and when Chieppa asked defendant if he had a key, defendant tossed the key in front of the officer. When the box was opened, the officers found several sheets of LSD and bags containing cocaine, ketamine, and marijuana. The officers also found drug paraphernalia inside the lockbox.

Defendant and E.A. were then placed under arrest. Defendant was charged with various drug offenses and hindering apprehension or prosecution. Thereafter, he was indicted for four drug offenses, including first-degree possession of LSD with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(6). He was also indicted for third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4).

After hearing the testimony and considering the evidence and arguments of counsel, on November 12, 2020, the trial court issued a written opinion and order denying defendant's motion to suppress the drugs. The court found that Chieppa initially went to investigate the situation under the community caretaking doctrine. When Chieppa learned that defendant and E.A. were not in danger, the officer made some field inquiries. When defendant could not produce identification, the officer had a reasonable and articulable suspicion that Chieppa had been driving without a license. While investigating that situation, Chieppa made observations that gave him reasonable and articulable suspicion

6

that the van might contain drugs, particularly because Chieppa had smelled the odor of burnt marijuana. The trial court found that those observations justified calling for a K-9 unit to further the investigation. When the K-9 unit arrived and detected the presence of narcotics from outside the van, the trial court found that the officers then had probable cause to conduct an automobile search. Consequently, the court entered an order denying defendant's motion to suppress the drugs seized from the motor vehicle.

II.

On appeal, defendant presents the following arguments for our consideration:

> POINT I – THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE POLICE STOPPED DEFENDANT AND THEN EXTENDED THE STOP, BOTH WITHOUT REASONABLE SUSPICION OR AN EXCEPTION TO THE WARRANT REQUIREMENT.
>
> A.    Patrolman Chieppa stopped Summa and [E.A.].
>
> B.    There was no reasonable and articulable suspicion to stop Summa and [E.A.].
>
> C.    The community caretaking exception does not apply in this case.

In evaluating a trial court's ruling on a suppression motion following a hearing, our review is "exceedingly narrow." State v. Barrow, 408 N.J. Super.

509, 516 (App. Div. 2009) (quoting State v. Locurto, 157 N.J. 463, 470 (1999)).

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "[F]actual findings based on a video recording or documentary evidence" are reviewed under the same standard. State v. S.S., 229 N.J. 360, 381 (2017). By contrast, the trial court's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014).

The United States and New Jersey Constitutions guarantee that individuals shall be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Generally, a warrantless search or seizure is invalid absent a showing that it 'falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Alessi, 240 N.J. 501, 517 (2020) (quoting State v. Mann, 203 N.J. 328, 337-38 (2010)).

In this matter, a series of exceptions to the warrant requirement justified the progressive investigation conducted by the police. The investigation progressed from community caretaking, to a field inquiry, to an investigative

detention.  Ultimately, the search and seizure were based on the automobile exception after a trained dog indicated that there were drugs in the van.

Under the community caretaking doctrine, "police officers, who act in an objectively reasonable manner, may check on the welfare or safety of a citizen who appears in need of help on the roadway without securing a warrant or offending the Constitution."  State v. Scriven, 226 N.J. 20, 38 (2016).  When engaged in community caretaking, police do not need to have probable cause or an articulable suspicion because they are not investigating a potential crime. State v. Diloreto, 180 N.J. 264, 276 (2004); see also Cady v. Dombrowski, 413 U.S. 433, 441 (1973) (explaining that the doctrine applies to police conduct that is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute").

"A field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer."  State v. Rosario, 229 N.J. 263, 271 (2017) (citing State v. Maryland, 167 N.J. 471, 483 (2001)).  "The test of a field inquiry is 'whether [a] defendant, under all of the attendant circumstances, reasonably believed he could walk away without answering any of [the officer's] questions." Id. at 271-72 (alterations in original) (quoting Maryland, 167 N.J. at 483).

A-0369-22

An investigative detention or stop occurs when "an objectively reasonable person" would feel "that his or her right to move has been restricted." Id. at 272 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" Ibid. (quoting State v. Stovall, 170 N.J. 346, 356 (2002)). A reasonable and articulable suspicion that someone has committed a motor vehicle offense will support an investigative detention or motor vehicle stop. State v. Atwood, 232 N.J. 433, 444 (2018); Scriven, 226 N.J. at 33-34. A police officer may make "ordinary inquiries incident to [the traffic] stop, such as 'checking the driver's license,' verifying whether the driver has any outstanding warrants, 'and inspecting the automobile's registration and proof of insurance.'" State v. Dunbar, 229 N.J. 521, 533 (2017) (alteration in original) (citations omitted) (quoting Rodriguez v. United States, 575 U.S. 348, 355 (2015)). "[I]f, as a result of the initial stop or further inquiries, 'the circumstances "give rise to suspicions unrelated to the traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions."'" Ibid. (second alteration in original) (quoting State v. Dickey, 152 N.J. 468, 480 (1998)).

A-0369-22

To conduct a search under the automobile exception to the warrant requirement, the State must "prove that probable cause to believe the vehicle contains contraband or other evidence of unlawful activity arose spontaneously and unforeseeably." State v. Courtney, ___ N.J. Super. ___, ___ (App. Div. 2024) (slip op. at 11) (citing State v. Witt, 223 N.J. 409, 446-48 (2015)). In that regard, the Court has explained that a warrantless roadside search of a vehicle is permissible under the automobile exception where "the circumstances giving rise to probable cause were unforeseeable and spontaneous," and the probable cause did not exist "well in advance of" the search. State v. Smart, 253 N.J. 156, 173-74 (2023). When these criteria are satisfied, police officers have discretion to proceed with a warrantless roadside search or impound the vehicle and secure a warrant. See Courtney, ___ N.J. Super. at ___ (slip op. at 13-14); State v. Rodriguez, 459 N.J. Super. 13, 15 (App. Div. 2019).

The factual findings made by the trial court support the progression of the police inquiries and the ultimate search of the vehicle and seizure of the drugs. The trial court credited Chieppa's testimony that he initially went to investigate the van to ensure that the van's occupants were not in need of assistance. So, the trial court found that Chieppa was acting under the community caretaking exception. The facts, moreover, establish that Chieppa did not stop the van.

When he approached the van, it was already stopped. Under those circumstances, Chieppa could have also lawfully conducted a field inquiry.

The evidence at the suppression hearing also confirms that shortly after Chieppa arrived, his inquiries progressed from field inquiries to an investigative detention. That progression was lawful because defendant could not produce a driver's license, and Chieppa had a reasonable and articulable suspicion that he had been driving without a license.

As part of his investigation of defendant's identity, Chieppa learned that defendant's license was suspended and defendant had given a false first name and birth date. Chieppa also made observations that the trial court found supported his reasonable and articulable suspicion that there might be illegal drugs in the van. In particular, the trial court credited Chieppa's testimony that he detected a faint smell of burnt marijuana.

At the time of defendant's arrest in 2018, "the smell of marijuana itself constitute[d] probable cause 'that a criminal offense ha[d] been committed and that additional contraband might be present,'" and "the detection of that smell satisfie[d] the probable-cause requirement." State v. Walker, 213 N.J. 281, 290, 288 (2013) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)). The

strength of the odor, moreover, was irrelevant for the purpose of establishing probable cause. State v. Judge, 275 N.J. Super. 194, 203 (App. Div. 1994).[2]

The police did not search defendant's van based on Chieppa's detection of the smell of marijuana. Instead, the trial court found that Chieppa's observations, including the smell of marijuana, gave rise to a reasonable and articulable suspicion that drugs were present in the van and that the officers, therefore, could detain defendant while they called for a K-9 unit. That finding by the trial court is supported by the law.

Our Supreme Court has adopted the federal standard for K-9 sniffs. Dunbar, 229 N.J. at 538. A canine sniff performed during a lawful detention does not constitute a search under either the United States or New Jersey Constitution. Id. at 539. If, however, bringing the K-9 unit out to conduct the sniff unreasonably prolongs a traffic stop beyond its lawful purpose, there must

---

[2] On February 22, 2021, the Legislature enacted the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56. Under CREAMMA, an odor of marijuana cannot create reasonable articulable suspicion or probable cause to conduct a warrantless search. N.J.S.A. 2C:35-10c(a). CREAMMA, however, only applies prospectively and, therefore, is not applicable to the search and arrest of defendant. See State v. Cohen, 254 N.J. 308, 328 (2023) (explaining that CREAMMA does not apply retroactively).

be independent reasonable suspicion of criminal activity beyond the motor vehicle violation.  Id. at 536, 539.

The trial court found that the roadside detention was justifiable because Chieppa had independent reasonable suspicion that illegal drugs might be present in the van.  Accordingly, the detention that went beyond the investigation of defendant's failure to have a license was justifiable.

Finally, when the K-9 dog indicated that narcotics might be in the van, the police then had probable cause to conduct a warrantless search of the van under the automobile exception.  See Smart, 253 N.J. at 172-73; Witt, 223 N.J. at 432. We are satisfied that the finding of probable cause here, predicated on the smell of burnt marijuana and then the K-9 sniff, arose from unforeseeable and spontaneous circumstances.  Cf. Smart, 253 N.J. at 173 (finding that the circumstances giving rise to probable cause were not unforeseeable and spontaneous when officers reasonably expected to find drugs in the vehicle prior to the stop after almost two hours of investigation).

We reject defendant's arguments because he tries to dissect an ongoing investigation into pieces, and then he tries to pick the pieces apart.  As already summarized, there was never a stop of the van; rather, there was an inquiry, followed by a field investigation, followed by an investigative detention.  The

14

community caretaking exception only started the chain of events, and once there was reasonable and articulable suspicion that defendant had been driving without a license, the subsequent inquiries and detentions were justified. Accordingly, the ensuing search and seizure of the drugs were lawful.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0369-22